United States v. Lenny Fernando Soto-Mateo Good morning, Your Honors. Eduardo Masfer for the appellant, Lenny Soto-Mateo. May it please the Court. The appellant urges the Court to reverse the finding of the district court judge, finding that he erred as a matter of law, and denying the defendant's motion to dismiss the indictment against him. The defendant's deportation order was fundamentally flawed, and the due process he received was significantly inadequate. The failure of the immigration judge to adequately explain, first of all, analyze the deportation notice to appear, that inaccurately alleged that he was an aggravated felon, realize that mistake, and inform the defendant of his right, deprives him of all due process in this case and in that particular case. And so what's your argument is he was deprived of the opportunity to seek a cancellation of removal? Yes, Your Honor, or to even appeal a denial of any of those decisions by the immigration judge. But even under the Second and Ninth Circuit cases about cancellation of removal being something which could be remedied here, they still require a showing of prejudice, which would suggest that there was a reasonable possibility that cancellation of removal would be granted. But could you address whether there is such a reasonable possibility? Two things, Your Honor. There is, and the district court judge in denying the motion never even got to that point. But there would be. Mr. Soto had been a lawful permanent resident of the United States since he was 19 years old. He had over, I want to say, seven years in the United States. But the government says that, first of all, the seven-year requirement wasn't satisfied, right? Because that's measured by the time that he committed the crime, and so he didn't have the seven years residence. He did. He was convicted of this offense in 2009. Well, the government says it's not the conviction, it's the time the crime was committed. Even if it was the time the crime was committed, the crime was committed in 2007. So it was still past the seven-year time period. The government never argued at any point until the first time on appeal that somehow he was not eligible for cancellation of removal, which he is. They don't even argue that he's not eligible. They say that it might be an issue of his eligibility. They don't even make that forth showing. As the government often asserts in this brief, it likes to raise new arguments on appeal that it never raised before or below. The district court judge in denying the application never even reached that point. He stopped at the fact that he didn't believe that the defendant had exhausted his administrative remedies by signing the waiver. But wouldn't the burden be on you to show prejudice? It is, Judge, to show that he's eligible for some form of relief, and we had asserted in our brief below that he was, that he was eligible for cancellation. But mere showing of eligibility is enough to show prejudice? Not in every case, Judge. It is in this case, where the issue here wasn't that the respondent had an immigration hearing, was present before the court, and made a waiver, but here the issue is that the immigration official who met with the defendant inaccurately told him that he was ineligible for relief, ineligible for any release from custody, and basically encouraged him to waive his appeal rights without any knowledge that he was even potentially eligible for a form of relief. That's what makes this particular case much more similar to the Ramos case and much different from some of the other district court cases. But it's not similar to the Ramos case. Ramos was a case that involved an inadequate translation, where you had a Spanish-speaking defendant who was presented an English-only waiver, and it was, quote, interpreted, close quote, to him by an immigration officer who admitted in the hearing that he spoke only broken Spanish. And that's what turned the tide in Ramos. We don't have anything like that in this case. Respectfully, Judge, I believe in Ramos, actually the form that was provided to him was provided to him in English and in Spanish. It was that the translating officer who reviewed the form with him, as Your Honor accurately points out, did not speak Spanish properly. So it wasn't clear that he had read it. One of the arguments that INS did with this form is, first, it told him he had a right to go consult a lawyer if he wanted to. And then, secondly, it set forward a factual and legal basis for its conclusions. And then, thirdly, it set forth in good faith what it understood at the time to constitute an aggravated felony, which, based on the facts as it set forward, would have been correct. In other words, it said he was sentenced to 25 months imprisonment for that crime. So are you saying that we should rule that when INS does all of that, when they tell someone to get a lawyer, when they give something in writing in a language they can understand, when they set forth all the facts and law based on their conclusion, and the conclusion is in good faith, if it turns out they're wrong, then it's not a knowing waiver? Well, unfortunately, Your Honor's premise is incorrect. He wasn't sentenced to 25 months. So it's not the issue that immigration accurately alleged all the facts as they understood it, or accurately alleged the law. No, they were wrong on that fact, hence they were wrong on the conclusion. But they set out what they understood the fact to be, and there's no allegation that they fudged that intentionally or otherwise. In fact, you can see how they made the mistake. In any event, he or his lawyer would be able to determine right from the form where they went wrong. So if that's not enough to sustain the waiver, then you've kind of created almost a pure liability. It's not so much pure liability, Judge, the liability's already there. The immigration judge, even in the stipulated removal context, has the obligation to review the documents to make sure the factual allegations are accurate. So we're not asking for a new remedy. The immigration judge makes the mistake when the immigration judge simply signs off on the stipulated order without reviewing to realize the errors. But I think you're saying if he's wrong, no matter in good faith, no matter what ahead of basis, no matter that he spells out what his reasoning is, it's any error, and in concluding one of those important facts, renders the waiver invalid. It wouldn't be any error. It would be, under the facts of this case, these errors. So, for example, if the respondent had been charged with multiple crimes of moral turpitude, and that was the basis of removal, and one of them was mistaken, but the others were correct, that's an error, but that's not an error that has resulted in any prejudice to the defendant. Yes, if there's material error and the immigration judge does not correct that material error, then, yes, the respondent or the alien is then being deprived their due process under that scenario, because they're being told that they're not eligible for relief. They're being told there's nothing to be done for them there. In custody, English is not their first language. They're being told they have to be deported from the United States. Then, yes, that is error that the government should not be doing. And you mentioned the language. What in the record shows that he wasn't able to fully understand and read all the forms that he was given here? Judges, there's nothing in the record that would establish that. So that's a red herring in the language. It isn't only because in Ramos the difference was that the paperwork in Ramos was in English and in Spanish, the same as in here. In Ramos, they had the benefit of a hearing, which the district court here did not. But on the language thing, for all we know, he could read both the English and the Spanish in this document. No, because the answers that he gives are always in Spanish. So the answers that he gives in the written waiver. Well, you want us to infer that because he has to answer in one language, not two, that means he doesn't speak the other? It means that he's certainly more comfortable in Spanish because he's answering the legal documents in Spanish. But he received the pertinent documents in both English and Spanish, so what difference does that make? It makes a difference only insofar as he's being given misadvice, so how well he understands the difference of what he's being told. When Your Honor brings up that the factual allegations is 25 months, is the notice to appear presented to him in Spanish? It is not. The notice to appear is presented to him in English. The waiver is what's given to him in Spanish and in English. So he gets the waiver form in two languages, but the accusations are still in English, and there's no translation of that. And so he's being told, perhaps in Spanish and perhaps even in good Spanish, I'll say, yes, you are not eligible for any form of relief. You are an aggravated felon. You are not going to be released from custody. Do you want to sign here and just not go to see the judge? Because that's all the form is really saying. It's saying you agree to everything that's in this paperwork that's not in your language, and we're not going to see the judge. The judge then still has the obligation under the statute to review the paperwork. So it's the waiver that he signs is arguably he signs on the waiver, I agree not to appeal the judge's decision. He then just doesn't appear in front of the judge. The judge's obligation to review is not eliminated, and that's by regulation. So there's no new right that we're asking. The issue here is when the immigration judge now fails to comply with his or her responsibility to review the documents and the alien has been inaccurately told that he's an aggravated felon, can't the government now use that against him? And I would submit to the court under the spirit of Mendoza Lopez from the Supreme Court of the United States, it is not. He has demonstrated. You say the alien has been inaccurately told that he's an aggravated felon. Yes. The law at the time that this all occurred, the weight of authority was that he was an aggravated felon. No, Your Honor. There was no authority that ever found that aggravated identity theft was an aggravated felon. I thought there were BIA cases that held that. There were not. The government says that there is no case law that says it, but that the absence of case law doesn't mean that it is an aggravated felon. It's just an absence of case law. But even today there's a split of authority on whether aggravated identity theft is or is not. There is only if it can be committed in a variety of different ways. The government slides the modified categorical approach to try to justify that maybe under some circumstances it could. Number one, in this case we know it's not because when he was sentenced he wasn't sentenced as an aggravated felon. Under your analysis, would there ever be a case in which the person, had they not signed a waiver, could have defeated removal, avoided it or had cancellation or otherwise? Yes, Your Honor. Would there ever be a case in which the person could have avoided it and yet the waiver would be effective? Because it seems to me in every one of those cases you could make the argument that INS said he was removable for this reason and didn't suggest he could avoid it in its papers, and yet we now think he could have avoided it and he wasn't told that, so therefore the waiver is not enforceable. I think it's outside the scope of this particular case, but I think there is a scenario. Your Honor, if he had been charged as being deportable as multiple crimes of moral turpitude, and so the waiver doesn't talk about his eligibility for relief, and notwithstanding that fact, he waives his right to appear in front of a judge and waives his right to apply for relief, then I would submit to the court, I think that's a much closer case to some of the circuits that have found that the immigration authorities don't have to tell you what form of relief you're entitled to. Does the immigration official's asking him to sign that form have to tell him what he's eligible for? He does not. Unfortunately, it's the telling him that he's an aggravated felony and that he is ineligible for relief, that's what triggers this particular case. But why is that a due process violation? There's a real question as to, I mean, Mendoza-Martinez is based on due process violations, the statute's based on due process violations, but is depriving him of the cancellation of removal opportunity a due process violation? It's not only that, it's also all his appellate rights. So at the time that he's being told, you're not eligible for anything, you're an aggravated felony, there is no hope for relief from you. You're now waiving your right to see a judge, you're waiving your right to appeal any adverse decisions of the judge. So you have no ability to review or challenge that. Well, is the deprivation of the cancellation of removal a due process violation? It is in and of itself, Judge. In addition to that, it's the waiver issue. What cases say that? The Second and the Ninth Circuit and the Sixth Circuit and the Third Circuit have all found that when you waive your right to appeal in this manner and waive your ability to challenge your deportation, all of those demonstrate, I don't know if this is exactly what your Honor is asking, that you've met the exhaustion requirement. No, no, what I was asking is whether the cancellation of removal is a due process right, which I'm not sure it is. I would submit to the Court that cancellation of removal is a due process right. It is a form of relief that a lawful permanent resident is entitled to apply for, of course, up to the Court's discretion about whether or not. But given the history of cases about how important it is that even in, for example, Padilla. So in Padilla, the Supreme Court says that maintaining an alien's eligibility to apply for cancellation or relief is a due process consideration, and that's why immigration warnings have to be given a certain way. That would be, I think, an example where the Court has highlighted that or said that So by misinforming him and then depriving him of even that opportunity and then depriving him of the ability to waive it is fatal in this case to his deportation or to the due process for his deportation. Thank you, Counselor. Thank you, Your Honor. Your Honor, may it please the Court, Randall Crum on behalf of the government. I think the fundamental error that the defendant makes in this case is misassigning the burden as it applies in a collateral proceeding like this. And the burden is on him to establish each element of the requirements, the statutory requirements to allow him to proceed with this collateral attack. The district court didn't get any further than the first one, finding that he hadn't shown that he had exhausted his remedies. And in the government's view, that was correct and in itself kind of ends the discussion. And I would say one point I don't point out in the brief so much, but the Court made a factual finding that he had decided not to appeal or to go further and contest his deportation because he didn't want to, that he wanted to be deported. And in De Leon, this Court said that that basically ends the matter, where there's evidence that the alien simply wanted to be deported to pursue whatever other avenues he might have. In this case, it appeared to be to come right back into the country and did not have any interest in an appeal. The fact that there may have been any misinformation wasn't something the Court even really had to consider. There was the allegation was that he hadn't been informed as to the right to counsel. The Court found that where there was evidence that, in fact, there he had an alternate identity and that his intent was to be deported as quickly as possible, come back in that way, that was essentially the end of the matter. And he couldn't now argue that he should have been allowed to go further. That sort of ended the question because he clearly had a reason to waive. And there was a factual finding here that the same thing was true. And I think in looking for the support for that, I think it's worth noting not only, as the District Court did, that he wrote a letter in English saying he wanted to be deported as quickly as possible, but that this wasn't the first time he knew what was going to happen because in 2007, when he pled guilty, he was told there would be deportation consequences. He had all the time between that and 2009 when he got the notice to appear to say, are there alternatives? Can I stay in the country if I want to? Is what I heard at the change of plea hearing really going to happen, or what can I do? There's no indication that he investigated that. Worth noting here, there's no affidavit submitted by the defendant that he did anything other than wait, and then the notice appear came, and he stipulated immediately, asked in a letter to be removed as soon as possible, and was. And under those circumstances, it's difficult to see why you even start to look behind that waiver where all the facts point to the fact that he had the information he needed to seek alternatives if he wanted them, and as the District Court found, just didn't want them. Yeah, but maybe he didn't want them because he wasn't aware of them. Well, again, it's certainly a possibility, but as has been noted, he did get a notice to appear that told him he had the right to counsel, and he chose not to go further. Now, again, it is a factual question, and I think it's one on which he bears the burden. If he wants to say the District Court was wrong to say, you know, he just didn't want to, he just wanted to be deported as soon as possible, he could do that, but it's hard to say we don't know if he did or did not know. He didn't submit an affidavit saying I was confused, and that's what differentiates this from something like Ramos, where there was an allegation of actual confusion, that there were questions that were asked and that the person who was interpreting could not answer. There's no, we have no information other than the mere inference to be drawn from, you know, the language in which certain questions were answered on a form that he had any confusion at all. He might have known exactly what he was doing. Was he eligible for cancellation or removal? Well, in the government's view, he wasn't, for two reasons. First, because in the government's view, under the laws that existed at the time, he was an aggravated felon by virtue of the aggravated identity theft under the modified categorical approach they could have found it was undertaken without consent. But secondarily, on the record as we have it, and again that's the defendant's fault that we don't have a more full record since he did not submit an affidavit that might explain otherwise, it doesn't appear that he met the seven years. Now, that may or may not be true. That's why we point out this. I'm confused as to what the difference between you is about the seven years. You say the seven years is measured by the time of the commission of the offense, but they say that even under that approach that he still satisfies the seven-year thing. The difference may be just the inadequacies of the current record, which is not developed on that point, as to the precise date in which he was admitted as a legal permanent resident. That's my guess because I don't know. I think the date of the commission of the crime is established in the record. I found that the date that I rely on is a date that has to do with when he was, the court said he was admitted as a legal permanent resident, but it's possible, you know, it is possible the record doesn't disprove this, that he actually came in earlier and then the period may have been met. But, again, on this record, I can't say, and it's his burden to show that he lost an opportunity. So if the record doesn't establish it clearly, then I think that redounds against his claim of prejudice. Is the deprivation of the cancellation of removal opportunity a due process violation? Well, I don't think it is. And the first of the cases, we've never addressed it, this court has never addressed it, in the context of a collateral attack on a legal reentry prosecution, but in the context of simple appeals to the BIA, this court has held that loss of discretionary review is not a due process violation. I don't know if they've addressed it in cancellation removal, but voluntary departure and at least one other form of discretionary relief have held it's not a due process violation. Those are cited in the government's brief. In the government's view, that is consistent with the weight of authority of courts that have applied it in a legal reentry context and have found that it is also not a due process violation there. Have the Second and Ninth found it's a due process violation? They have, and I think we argue on not necessarily the soundest of reasoning. What they have done in the Seventh Circuit, as it's pointed out, that they did this, is they take what was an assumption of Mendoza-Lopez, which is that there was a violation of due process. The government conceded that for the purpose of certiorari in that case and assumed that that is something that had to be proved, that the Supreme Court had found, essentially that there was, based on inadequate information about discretionary relief. What the Seventh Circuit has pointed out, that wasn't something the Supreme Court had to hold. The Supreme Court was taking that for granted, and therefore it doesn't, we can't take anything from that case about whether it always would be a due process violation. Your Honor, if there aren't any further questions, I'll rely on the brief for the remaining issues. Thank you. Thank you, Mr. Kahn.